UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SANTIAGO MILIAN-PUJOL,

        Petitioner,

    v.

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION CENTER,
US ATTORNEY GENERAL,

        Respondents.

Case No. 2:26-cv-1423-KCD-NPM

_____/

## ORDER

Petitioner Santiago Milian-Pujol has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 3.)[1] He claims that his continued imprisonment violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondents oppose the petition. (Docs. 8, 12.) For the reasons below, the petition is **GRANTED**.

## I. Background

Milian-Pujol is a citizen of Cuba. He entered the United States in 1980 and was released on parole. He was then ordered removed in 2009. Apparently that deportation could not be executed, so he was placed on an

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

order of supervision. On November 14, 2025, ICE revoked that supervision and put him back behind bars. He has remained there ever since. Milian-Pujol argues his removal is not reasonably foreseeable and asks this Court to order his immediate release.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

The Government first claims that two provisions of the INA—8 U.S.C. §§ 1252(g) and (b)(9)—preclude federal jurisdiction. This Court has already addressed these precise arguments and rejected them numerous times for the same reasons they fail again today. *See Obando-Vargas v. Assistant Dir.*, No. 2:26-CV-265-KCD-NPM, 2026 WL 796804, at *1-2 (M.D. Fla. Mar. 23, 2026).

That leaves the merits, which, as noted, concern Milian-Pujol's continued detention pending removal from the United States. (Doc. 3 at 7-8.)

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 679. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good

3

reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Milian-Pujol satisfies the initial temporal requirement. ICE took him into custody seven months ago. Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Milian-Pujol has carried his initial burden of showing there is no significant likelihood of removal in the reasonably foreseeable future. He does so by pointing to the fact that ICE has not provided paperwork or anything with a deadline for his removal. Nor has Cuba been willing to accept him in the part. This is more than enough reason to believe his removal is nowhere in sight.

The burden thus shifts to the Government to rebut Milian-Pujol's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the Government offers no documents, no diplomatic agreements, and no concrete evidence that Milian-Pujol will be removed in the near future. (Doc. 8.) Instead, the Government extends hope and a placeholder. It relays an assertion from ICE that the agency is working towards executing a third-country removal (the country is not identified). (*Id.* at 8 n.2.) The Government readily admits it has not a single document to support this representation. (*Id.*) That is not how a burden of proof works. A mere representation from an agency to its lawyers—unbacked by a shred of

4

evidence—cannot justify keeping a man locked in a cell. Because the Government offers nothing to suggest that removal to any third country is more likely now than in 2009, Milian-Pujol must be released.

It is easy to see why this outcome might cause unease. Milian-Pujol has been convicted of serious crimes. (*See* Doc. 8 at 2 n.1.) Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for nearly two decades without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 679. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

## IV. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Milian-Pujol will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his Order of Supervision.

One last issue. Milian-Pujol also brings a second claim, arguing that ICE flouted its own regulations—and thereby violated the Due Process Clause—when it revoked his supervised release. (Doc. 3 at 7.) But we need not wade into those issues today because Milian-Pujol has already crossed the finish line. The whole point of his petition was to secure his release from ICE custody. Since he is getting exactly what he asked for under *Zadvydas*, any ruling on the agency's revocation procedures would be purely academic. Milian-Pujol's remaining claims are therefore dismissed as moot.

Accordingly, it is **ORDERED**:

1. The Amended Petition for Writ of Habeas Corpus (Doc. 3) is **GRANTED**.

2. Respondents shall **RELEASE** Petitioner Santiago Milian-Pujol from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on June 17, 2026.

Kyle C. Dudek
United States District Judge